BARBARA HOFFMAN (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200 (phone)

*Attorney for Plaintiff Kalliope Amorphous*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

<table>
<tr><td>

**KALLIOPE AMORPHOUS**

                          Plaintiff,

    **v.**

**JANET MORAIS, as individual and**
**president of DeMorais International, Inc.;**
**DEMORAIS INTERNATIONAL, INC.;**
**KOKET, LLC; BOCA DO LOBO, dba Boca**
**Do Lobo International**

                       Defendants.

</td><td>

**17-Civ-00631**

**VERIFIED COMPLAINT**
**AND JURY DEMAND**

</td></tr>
</table>

       Plaintiff, Kalliope Amorphous (hereinafter "Plaintiff" or "Ms. Amorphous"), by and through her attorney, Barbara T. Hoffman for her complaint against Defendants Janet Morais ("Morais" or "Ms. Morais"); DeMorais International, Inc. ("DeMorais International"); Koket, LLC ("Koket"); and Boca Do Lobo, dba Boca Do Lobo International ("Boca Do Lobo") (collectively "Defendants"), hereby states and alleges as follows:

**NATURE OF THE ACTION**

       1.     This is an action for the willful copyright infringement brought by the prominent visual artist Kalliope Amorphous. Ms. Amorphous is best known for her extensive work in self-portrait photography. Using the camera as her primary artistic medium of

expression, she assumes the roles of model, stylist, and photographer and uses her own image as a prop to create the protagonists of her iconic photographs.  Ms. Amorphous creates her own alternative processes and methodologies using handmade and alternative lighting as well as experimenting with textiles, surfaces, mirrors, and in-camera distortion techniques. Much of Ms. Amorphous's work uses reflections, blur, mirrors, and multiple exposure to lead the viewer through the artist's favorite themes — identity, mortality, time, and consciousness.

2.    Defendants used two iconic images created by Plaintiff without her authorization or her name or CMI in a massive international print and digital advertising campaign by these interlacing companies to promote and sell their brand's image and furniture designs.

3.    Plaintiff's images have also been used by Defendants to promote the Universal Pictures *Fifty Shades of Grey* and *Fifty Shades Darker* (the "Films"). Defendants were commissioned to design the interior of the hyper luxury apartment of Christian Grey, the protagonist of the Films.

4.    The image at the right is a screenshot taken on January 23, 2017 from Touched Interiors's website. It is a press release from Boca Do Lobo promoting the "Tortuga Chest" and the film *Fifty Shades Darker* with Ms. Amorphous's unauthorized image as the focal point and tie-in of the interior design.



5.     In sum, this is an action for: (i) copyright infringement in violation of 17 U.S.C. §§ 101 and 501 et seq.; (ii) contributory copyright infringement in violation of 17 U.S.C. §§ 101 and 501 et seq. and violation of 17 U.S.C. §§ 1202 (a) and (b).

## PARTIES

6.     Kalliope Amorphous is a prominent internationally acclaimed visual artist. Ms. Amorphous has gallery representation in England and Portugal. Her artwork is included in private collections worldwide *inter alia* Spain, Romania, Germany, Holland, India, Russia, and the United States. She currently divides her time between Providence, Rhode Island and New York City.

7.     Upon information and belief, DeMorais International, Inc. ("DeMorais International") is a corporation incorporated in the Commonwealth of Virginia. The State Corporation Commission SCC eFile lists Janet Morais as registered agent. DeMorais International's website states that it is a trade-focused firm established by Janet Morais to share a highly curated collection of distinguished and unique pieces within the design community. It is a conglomerate encompassing eight luxury brands: Brabbu, Boca do Lobo, Delightfull, Miyabi Casa, Alex Turco, MyFace, Maison Valentina, Sigma L2 and KOKET (Sister Company). http://demoraisinternational.com/

8.     Upon information and belief, Koket, LLC ("Koket") is a limited liability partnership organized under the laws of the state of Virginia founded by Janet Morais with a business office in New York. Ms. Morais describes Koket's mission as the representation of empowerment, seduction and desire with daring design. Upon information and belief, the

collection is marketed worldwide through a selective network of interior designers and luxury retail stores. https://www.bykoket.com/

9. Upon information and belief, Boca Do Lobo is a Portuguese company owned by Janet Morais and her husband, Amândio Pereira. Pereira, the CEO , owns two New York websites: Deco New York and New York Design Agenda. Its American brand ambassador, Joana Valente Silva, is listed on the Boca Do Lobo website with a New York phone number. The Facebook page of Boca Do Lobo lists DeMorais International, 9255 Center Street, ste. 102, Manassas, VA 20110 as its United States representative and, as its partners, *inter alia*, *Koket: Love Happens, Brabbu: Design Forces, Essential Home: Mid Century Furniture, Maison Valentina: Luxury Bathrooms,* and *Covet House: Curated Design*. http://www.bocadolobo.com/

10. Upon information and belief, Janet Morais resides in New York and Virginia. She is the founder and artistic director of Koket, and upon information and belief, the President and director of DeMorais International. Janet Morais is the Brand Director for Boca Do Lobo under her company DeMorais International.

## JURISDICTION AND VENUE

11. This case arises under Copyright Act, 17 U.S.C. §101 et. seq. (the "Copyright Act"). This Court has federal jurisdiction over Ms. Amorphous's claims pursuant to 28 U.S.C. §1331, 1338(a), and 1338(b), as well as diversity jurisdiction under 28 U.S.C. §1332 as there exists diversity of citizenship among the parties hereto and the amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.

12.     This Court has personal jurisdiction over Defendants.  Defendants do continuous and systematic business in New York and this District. Defendants maintain an office and employ personnel in New York and this District, and thus are physically present in the State. See N.Y. C.P.L.R. § 301. Defendants have also transacted business in this state on matters giving rise to this suit. See id. § 302(a)(1).  Defendants have also committed infringing acts outside of New York causing injury to Plaintiff in New York, and Defendants regularly do or solicit business in New York, and/or derive substantial revenue from goods used or services rendered and/or expect or reasonably should expect its infringing conduct to have consequences in New York. See id. § 302(a)(3). In addition, Plaintiff has been injured in New York by Defendants' conduct

13.     Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (d) and 28 U.S.C. § 1400.

## FACTS

14.     Ms. Amorphous states, "My images reflect my love of mythology, paradox, and the juxtaposition of light and dark, beauty and beast. I am continually drawn to concepts involving the subconscious, alienation, time, memory, deconstruction, duality, and transcendence. Rather than approaching self-portraiture from a purely autobiographical perspective, I enjoy exploring the boundaries between "self" and "other" through the creative interpretation of identity, archetype, myth, and memory.  By embracing the roles of stylist, photographer, and model, I can more deeply explore my conceptual ideas as the subject that is integrated into, rather than separate from the photograph."

15.     Ms. Amorphous's visual works of art are signed unique or limited editions sold through her galleries or though her website. http://www.kalliopeamorphous.com/

16.     Ms. Amorphous's images are protected with embedded CMI and the website has a detailed copyright notice. The website prohibited any downloading or use of Ms. Amorphous's artworks or Photographs at Issue. The website states *inter alia*, "All photographs and texts appearing on KalliopeAmorphous.com are the exclusive intellectual property of Kalliope Amorphous and are protected under United States and international copyright laws. The intellectual property may not be downloaded except by normal viewing process of the browser. You may not modify, copy, frame, reproduce, publish, or display any portion of the content without prior written consent of Kalliope Amorphous."

http://www.kalliopeamorphous.com/copyright-information

17.     On or about August 2012, Ms. Amorphous created original works of art as part of a series entitled "The Glass House Series."

18.     One image from the Glass House Series is *Go Back* ("Image I") and is depicted on the right.

19.     *Sunset* is another image from the Glass



House Series ("Image II") and is depicted on the left.

20.     Collectively Images I and II are referred to as the "Photographs at Issue."

21.     The Photographs at Issue were registered with the United States Registrar of Copyright, United States Copyright Office on August 23, 2012.

6

22.     Image I and Image II, with the appropriate Copyright Registration certificate, is attached hereto as Exhibit A.

23.     On or about November 3, 2016, Plaintiff discovered on the internet an advertising campaign carried out by Boca Do Lobo, in connection with DeMorais International and Koket, which utilized, without authorization, Image I and Image II.

24.     Plaintiff subscribes to various services to track any piracy of her artworks which are protected with embedded Copyright Management Information ("CMI"), including her name and the © with date.

25.     Ms. Amorphous further discovered and documented that the Photographs at Issue were used to promote Defendants' brands and that the Photographs at Issue appeared in periodicals and on magazine covers from as early as February 17, 2016, although Plaintiff was not aware of this usage prior to November 3, 2016.

26.     Upon information and belief, the Photographs at Issue were used to promote at least three products.

27.     The first product is a limited edition gold chest called the "Tortuga Chest" selling for $21,000.00 (which is currently sold out).



28.     Upon information and belief, the Tortuga Chest was designed for and advertised with Image I in connection with the movies, *Fifty Shades of Grey* and *Fifty Shades Darker,* and is depicted at the right and is also attached hereto as Exhibit B.



29.     The second product is the "Soho Center Table" selling for approximately $10,000.00, which uses Ms.

7

Amorphous's Work of Art, *Sunset*, or Image II. The infringing use of Image II in connection with the Soho Center Table is depicted at the left and is also attached hereto as Exhibit C.

30.     The third product is the "Carytical Rug" selling for approximately $10,000.00, which uses Ms. Amorphous's Work of Art, *Sunset*, or Image II. The image at the left, attached hereto as Exhibit C, is also used to show and sell the Carytical Rug.

31.     Upon information and belief, the Photographs at Issue have been used as "set dressing," and the primary focus and feature prominently in  the international and national web, magazine, and news based on advertising campaigns of the Defendants, embodying the very essence of the passion, love, and seduction Defendants seek as the brand image.

32.     Upon information and belief, the Photographs at Issue have been used on magazine covers worldwide, catalogs, press packages, promotional materials, and sales sheets by the company, but also DeMorais International features the images on the DeMorais International website. On November 3, 4, and 5, 2016, Plaintiff documented infringing uses by Defendants, which documentation is included in the Exhibits D-I attached hereto.

33.     Attached hereto as Exhibit D are known print magazines for Image I: The Resident (UK) (May 2016 issue) Cover, The Art of Design (UK) (Issue 19, February 26, 2016) Cover, Modern Luxury (US) (May 2016) Full Page Ad, Hi Home (Russia) (Issue 113 Summer 2016 Issue) Cover, and F Magazine (Angola) (May 2016 Issue) Editorial.

34.     Attached hereto as Exhibit E are other known publications for Image I: "100 Must See Limited Edition Furniture Ideas" from (Boca Do Lobo), "Top Trends 2016 – All You Need To Know For This Spring" (Boca Do Lobo), "Spring Trends – 10 Stunning

Hallway Ideas" (Boca Do Lobo), "5 Do And Don'ts Of Decorating" (Boca Do Lobo), and Luxury Magazine (several issues, Boca Do Lobo).

35.     Attached hereto as Exhibit F are known promotional materials using Image I and Image II: a press release, press kit, advertisements on Pressloft, and an advertisement in Covet House Catalog.

36.     Attached hereto as Exhibit G is a Product Page for Image II as presented on DeMorais International.

37.     Attached hereto as Exhibit H are *Fifty Shades Of Grey* press materials Link To Infringed Work with links to download infringed work.

38.     Attached hereto as Exhibit I are uses by Covet House: the front cover and back cover of the Covet House Catalogue, page 81 of catalog showing the Tortuga Chest (Image I), and page 139 of catalog showing the Soho Center Table (Image II).

39.     From November 17, 2016, Defendants were sent the first of several cease and desist letters from the Plaintiff via email and Federal Express. Although there were initial technical difficulties based on the size of the files, ultimately, all emails and Federal Express letters were received, as they were not returned, upon information and belief. Notwithstanding, in blatant disregard of Ms. Amorphous's rights as an artist and copyright owner, Defendants continued to transmit, reproduce, display and create derivative works of Ms. Amorphous's Photographs at Issue.

40.     On November 21, 2016, Didia Sousa, a product specialist at Boca Do Lobo, called Plaintiff's attorney and told Plaintiff's attorney that Boca Do Lobo's attorneys would be contacting her within a week. Boca Do Lobo's attorneys have not contacted Plaintiff's attorney.

41.    Upon information and belief, by November 30, 2016, Defendants had failed to remove the Photographs at Issue from the advertising campaign or any publications. The Photographs at Issue were visible in catalogs, blog posts, and press materials. See

http://www.bocadolobo.com/press/download/presskit/presskit-bocadolobo-english.pdf

https://issuu.com/bocadolobo/docs/catalogue_bl?e=1774794/7440663

42.    On December 1, 2016, Plaintiff's attorney sent a letter via email to Ms. Morais and Ms. Didia Sousa, product specialist at Boca Do Lobo, stating, *inter alia*, "When we last spoke, Didia had informed me that she was contacting Boca Do Lobo's attorneys and that they would be contacting me. Not only have they failed to contact me, but your company, as well as Koket, has continued to infringe Ms. Amorphous's copyrighted works. I will not belabor the point, but attached as exhibits below are continuing examples of both companies' infringement of Ms. Amorphous's artwork. In addition, DeMorais International has continued to promote the Boca Do Lobo global brand and exhibit and advertise with Ms. Amorphous's artwork on various sites and publications. Copies of the infringements are attached below, showing the intentional infringement of both companies on Instagram (Exhibit A), Facebook (Exhibits B and C), bocadolobo.com (Exhibits D, E, F, G, H, I, J, and K), issuu.com (Exhibit L), and Home Decor Ideas (Exhibit M)."

43.    The Exhibits referred to in the letter dated December 1, 2016 are collectively attached hereto as Exhibit J.

44.    On December 3, 2016, Plaintiff sent an email to her attorney informing her that Image II had been moved to the front page of the Boca Do Lobo website. Plaintiff also included an article dated February 17, 2016, which uses Image II "To make home artwork

serve as more than just a focal point, but as unifying feature within an interior design" (see Exhibit K).

45.     On December 6, 2016, Plaintiff's attorney sent another cease and desist letter via email and Federal Express to Ms. Morais and Mr. Amândio Pereira, CEO of Boca Do Lobo and husband to Ms. Morais, stating, *inter alia*, "I spoke to Ms. Didia Sousa, product specialist at Boca Do Lobo, on November 21, 2016 concerning the copyright infringement of Boca Do Lobo of my client's artwork. Previously, on November 17, 2016, a cease and desist letter was mailed and received. Ms. Sousa had informed me that she was contacting Boca Do Lobo's attorneys and that they would be contacting me. Not only have they failed to contact me, but Boca Do Lobo, DeMorais International and Koket (the "Infringers") have continued to infringe Ms. Amorphous's copyrighted artworks. […] I will not belabor the point, but attached as exhibits below are continuing examples of the Infringers' uses of Ms. Amorphous's artwork."

46.     On December 14, 2016, Plaintiff's attorney sent an email to info@demoraisinternational.com following a telephone call to DeMorais International. The email stated, *inter alia*, "Neither Didia Sousa from Boca Do Lobo nor her lawyers have contacted us since the sending of this letter. She has not responded using the phone number or email address provided. As noted, there should have been an immediate takedown. There was not. The images appear on your website as well as Boca Do Lobo. Your infringement is now willful."

47.     On December 19, 2016, Plaintiff's attorney sent a cease and desist letter via email to Didia Sousa, which stated, *inter alia*, "This is our fourth cease and desist letter to

you and DeMorais International without apparent success. In fact, you have fraudulently led

us into believing that you would correct the situation and get back to us, which you did not."

48.     On January 3, 2017, Plaintiff documented several infringing uses of

Image II used to sell the Carytical Rug

worldwide.



49.     On January 3, 2017,

Plaintiff provided to her attorney a link and

screenshot to Defendants' London-based group

using the same photo to advertise a rug by

Boca Do Lobo (Exhibit L): http://covetedition.com/inspirations/the-most-beautiful-

contemporary-and-exotic-rugs/.

50.     Upon information and belief, Boca Do Lobo has used Image II to

promote not only the SoHo Table, but also the Carytical Rug.

Examples: http://homeandecoration.com/play-black-green-living-room/

http://www.designcontract.eu/products/luxury-decor-using-outstanding-rugs/

http://www.contemporaryrugs.eu/contemporary-rugs-by-boca-do-lobo/.

51.     From December 3, 2016 until the present, Defendants have continued

to infringe Plaintiff's Photographs at Issue. Attached hereto as Exhibit M are selected images

of infringements from December 16, 2016 to January 23, 2017.

52.     In sum, from at least February 17, 2016 to the present, the Defendants

engaged in direct willful copyright infringement by a massive advertising campaign,

internationally and domestically, and induced its clients, its customers, retailers, and web-

based and print-based media (collectively "Defendants' Clients") to use the Photographs at

Issue to sell and market Defendants' luxury brands, Defendants' products, and lifestyle philosophy identified with the luxury brands. Defendants knowingly induced or materially contributed to the direct infringements by Defendants' Clients in *inter alia* the exclusive reproduction rights and the right to create derivative works. At the same time, Defendants derive a direct financial benefit from the above-described infringing activity of Defendants' Clients.

**FIRST CLAIM**
**COPYRIGHT INFRINGEMENT**
(17 U.S.C. § 101 et seq.)

53.     Ms. Amorphous incorporates by reference ¶¶ 1-52 above as if fully set forth herein. The Photographs at Issue are original works of authorship by Ms. Amorphous.

54.     Ms. Amorphous holds all right, title and interest in and to the copyrights of each of the Photos at Issue. Pursuant to 17 U.S.C. § 106, Ms. Amorphous has the exclusive right to reproduce, distribute, display, and/or prepare derivative works from the Photos at Issue.

55.     Ms. Amorphous registered the Photographs at Issue and complied with all requirements to obtain copyright registration copies for the Photographs at Issue. As set forth above the certificate for the Photographs at Issue is attached as Exhibit A.

56.     By the actions alleged above, Defendants have willfully infringed since at least November 3, 2016, and continue to infringe Ms. Amorphous's copyrights in each of the Photographs at Issue, by (i) reproducing, distributing, transmitting, displaying, and creating derivative works of the Photographs at Issue without the permission of Ms. Amorphous and (ii) creating, and causing or inducing others to reproduce, copy and create

derivative works from the Photos at Issue in violation of Ms. Amorphous's exclusive rights under 17 U.S.C. § 106.

57.     Defendants' infringements were and are conducted without Plaintiff's consent and are not otherwise authorized under the Copyright Act and the DMCA "Safe Harbor."

58.     Defendants' infringements were and are willful and committed with full knowledge and conscious disregard for Ms. Amorphous's copyrights and exclusive rights in the Photographs at Issue.

59.     As a direct and proximate result of the copyright infringements detailed above, Ms. Amorphous has been and continues to be damaged in an amount unknown at present and to be determined at trial.  Defendants have garnered and/or will garner substantial infringing profits in an amount presently unknown, which profits should be disgorged to Ms. Amorphous.

60.     In the alternative and at her election, Ms. Amorphous is entitled to seek maximum statutory damages for each separate act of willful infringement by Defendants in an amount of $150,000 for each of the Photographs at Issue, infringed by each Defendant.

61.     Ms. Amorphous is also entitled to statutory attorney's fees pursuant to 17 U.S.C §505.

62.     Ms. Amorphous has no adequate remedy at law to protect her rights in the Photographs at Issue and to prevent Defendants from continuing to infringe the Photographs at Issue to injure Ms. Amorphous.  Ms. Amorphous has suffered and is continuing to suffer irreparable injury from the Defendants' conduct as alleged which *inter*

*alia* has deprived her of her ability to sell her Photographs at Issue and made the entire body of Photographs at Issue available for use by Defendants, with no payment to her.

63.     As a direct and proximate result of the copyright infringements detailed herein, Plaintiff is entitled to preliminary and permanent injunctive relief enjoining and restraining Defendants from infringing her copyrights.

## SECOND CLAIM
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
(17 U.S.C. § 101 et seq.)

64.     Ms. Amorphous incorporates by reference ¶¶ 1-52 above as if fully set forth herein. The Photographs at Issue are original works of authorship by Ms. Amorphous.

65.     Defendants had reason to know of the direct infringement of the Photographs at Issue by Defendants' Clients and other agents of Defendants. In fact, Defendants promote infringements by sending the Photographs at Issue in press kits and catalogues to Defendants' Clients. The Defendants encourage and induce the Defendants' Clients to publically display and publically distribute, or transmit the Photographs at Issue, without Plaintiff's name or CMI.

66.     Defendants knew or had reason to know that Ms. Amorphous's rights were protected by copyright.

67.     Defendants have knowingly encouraged, assisted, induced, caused and/or materially contributed to the direct infringement by magazines, periodicals, websites, and other agents of Defendants. The conduct described above is without Ms. Amorphous's consent, or any other license or agreement and not otherwise permissible under the Copyright Act.

68.     Defendants have derived substantial financial benefit from the infringing activity of Defendants' Clients, which infringing activity they control.

69.     Defendants' infringements were and are willful and committed with full knowledge and conscious disregard of Ms. Amorphous's copyrights and exclusive rights in and to the Photographs at Issue.

70.     Ms. Amorphous is entitled to recover from Defendants the profits made by it from infringements of the Photographs at Issue and her damages therefrom, or at Ms. Amorphous's election, statutory damages pursuant to 17 U.S.C. §504.

71.     Ms. Amorphous is also entitled to recover from Defendants costs and attorney's fees pursuant to 17 U.S.C. §505.

72.     The infringements that Defendants induced, caused, assisted, or material contributed to through the conduct described above have caused, and, unless restrained by this Court, will continue to cause irreparable injury to Ms. Amorphous not fully compensable in monetary damages. Ms. Amorphous is therefore entitled to preliminary and permanent injunction enjoining Defendants from further infringements.


### THIRD CLAIM
### VIOLATION OF THE DMCA
### (17 U.S.C.§ 1202 (a) and (b) INTEGRITY OF COPYRIGHT MANAGEMENT)


73.     Ms. Amorphous incorporates by reference ¶¶ 1-52 above as if fully set forth herein. The Photographs at Issue are original works of authorship by Ms. Amorphous.

74.     17 U.S.C Code § 1202 - Integrity of copyright management information, current through Pub. L. 114-19 provides *inter alia*

i)   False Copyright Management Information.— No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—

    (a)  provide copyright management information that is false, or

    (b)  distribute or import for distribution copyright management information that is false.

ii)  Removal or Alteration of Copyright Management Information.— No person shall, without the authority of the copyright owner or the law—

    (a)  intentionally remove or alter any copyright management information,

    (b)  distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or

    (c)  distribute, import for distribution, or publicly perform works, copies of works, or phono records, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,

75.   The term "copyright management information" is defined at 17 U.S.C §1202(c) to mean "any of the following information conveyed in connection with copies…or displays of a work, including in digital form…."  The statute includes title, author and copyright notice as CMI.

76.   Upon information and belief, the CMI has been intentionally removed by Defendants.

77.   None of Defendants' uses of the Photographs at Issue in connection with the infringements set forth herein, use or used Ms. Amorphous's name or other CMI, all

of which was embedded in the Photographs at Issue before the Photographs at Issue were posted to the internet by her.


## RELIEF REQUESTED

WHEREFORE, Kalliope Amorphous prays for relief as follows:

1.      For a judgment that Defendants  have knowingly and willfully infringed Ms. Amorphous's copyrights in the Photographs at Issue;

2.      For a judgment that Defendants are liable for contributory infringement of Ms. Amorphous's Photographs at Issue;

3.      That as the proximate result of Defendants' contributory actions, Defendants have induced others to infringe and are direct infringers of Ms. Amorphous's copyright;

4.      For a judgment that Defendants have (i) knowingly and willfully altered or removed the CMI associated with the Photographs at Issue, (ii) knowingly and willfully distributed works knowing that the CMI was removed or altered, and (iii) knowingly and willfully produced and distributed false CMI, all with intent to induce, enable, facilitate, conceal or profit from their infringement of the Photographs at Issue;

5.      For an order under 17 U.S.C. §§ 502(a) enjoining Defendants, their clients, and licensees during the pendency of this action from directly or indirectly infringing any of the Photographs at Issue, as detailed in this Complaint and an order instructing Defendants to notify users and other social networking sites of the pendency of this action and to remove unauthorized Photos at Issue;

6.      For an Order that during the pendency of this action that Defendants, including their directors, officers, agents, servants, employees, and all other persons in active concert, privity, or participation with them, are required to maintain records and are enjoined from disposing of records, relating to the acquisition, distribution, reproduction, licensing, sale or display of the Photographs at Issue;

7.      For an Order under 17 U.S.C. §§ 502(a) and 1203(b)(1) permanently enjoining Defendants, including their directors, officers, agents, servants, employees, and all other persons in active concert, privity or participation with them, from directly or indirectly infringing any of the Photographs at Issue;

8.      For an award of Ms. Amorphous's actual damage and Defendants' profits in such amounts as may be found under 17 U.S.C. §§ 504(b) and §§1203(c)(2);

9.      Alternatively, at Ms. Amorphous's election, that the Court enter judgment for statutory damages under 17 U.S.C. §§ 504(c) in an amount up to $150,000 for infringement of each Photograph at Issue  by each of the severally liable Defendants, and under 17 U.S.C. § 1203(c)(3) in an amount up to $25,000 for "each violation" of §1202 (a) and (b);

10.     For an award of actual or statutory damages against Defendants for copyright infringement of the Defendants' clients whom were induced solely by Defendants to infringe Ms. Amorphous's rights under 17 U.S.C. § 101 et seq. and the DMCA;

## DEMAND FOR JURY TRIAL

Ms. Amorphous hereby demands trial by jury of all issues triable by jury.

Dated January 26, 2017

Respectfully submitted,

By: _Barbara Hoffman_

Barbara Hoffman, Esq. (BH 8931)
The Hoffman Law Firm
330 West 72nd Street
New York, New York 10023
(212) 873-6200

Attorney for Plaintiff Kalliope Amorphous

**<u>VERIFICATION</u>**

I am the Plaintiff in this action. I declare pursuant to 28 U.S. Code § 1746 under penalty of perjury that I have read the foregoing Complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

_____
Kalliope Amorphous

Dated: 26 day of January 2017